**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANGELICA PAOLA TRILLERAS GOMEZ, MD,
8990 19th Street, Apt. 421
Ranch Cucamonga, CA 91701

JONATHAN ALAN LIAO
8990 19th Street, Apt. 421
Ranch Cucamonga, CA 91701

    *Plaintiffs*,

   v.

MARKWAYNE MULLIN, *in his official capacity as
Secretary of the U.S. Department of Homeland Security*
245 Murray Lane SW
Washington, D.C. 20528

JOSEPH B. EDLOW, *in his official capacity as
Director of the U.S. Citizenship and Immigration
Services*
5900 Capital Gateway Drive
Camp Springs, MD 20588

CARRIE M. SELBY, *in her official capacity as Acting
Associate Director of Service Center Operations,
U.S. Citizenship and Immigration Services*
5900 Capital Gateway Drive
Camp Springs, MD 20588

MARCO A. RUBIO, *in his official capacity as
Secretary of the U.S. Department of State*
2201 C Street NW
Washington, DC 20520

JENNIFER L. WERONSKI, *in her official capacity as
Chief, Waiver Review Division, U.S. Department of State*
2201 C Street NW
Washington, DC 20520

    *Defendants*.

No.

## <u>PLAINTIFFS' COMPLAINT FOR RELIEF UNDER ADMINISTRATIVE PROCEDURE ACT</u>

Plaintiffs, by their undersigned counsel allege as follows:

### I.    INTRODUCTION

1.    This action arises under the Administrative Procedure Act ("APA"). Plaintiffs Angelica Paola Trilleras Gomez, MD, ("Dr. Trilleras") and her spouse Jonathan Alan Liao ("Mr. Liao") seek review of the Defendant U.S. Citizenship and Immigration Services' ("USCIS") decision to deny their Application for Waiver of the Foreign Residency Requirement ("Form I-612" "I-612," "waiver application," or "J-1 waiver") based solely on the Defendant U.S. Department of State's ("State Department") unwritten, unpromulgated rule that it will not issue a recommendation for an applicant who has a previously approved waiver application.

2.    On its face, the State Department's rule may seem practical; perhaps as a preservation of agency resources and a preventative measure against duplicative and unnecessary immigration relief. However, in practice, this rule wrongly affects a category of persons from obtaining this Congressionally authorized relief even when they are otherwise eligible.

3.    Certain J-1 nonimmigrant visa holders are affected by 8 U.S.C. § 1182(e)'s requirement (the "foreign residence requirement") to reside and be physically present in the country of their nationality or last residence for an aggregate of at least two years before being able to apply for an immigrant visa, permanent residence, or H or L nonimmigrant visas. Effectively, the foreign residence requirement ends such a person's ability to immigrate to the United States without fulfillment or relief. Among those J-1 visa holders who become subject to this requirement are those who came to the United States like Dr. Trilleras for graduate medical education. As such, she must either fulfill the foreign residence requirement or seek a waiver as

permitted by § 1182(e). As described below, most J-1 waiver applications generally require a USCIS eligibility determination, a State Department favorable recommendation, and USCIS' favorable exercise of discretion to grant the waiver.

4.    As a physician who came to the United States to receive graduate medical education, among other waiver types, Dr. Trilleras was eligible to apply for the only J-1 waiver controlled by a statute other than just § 1182(e), upon the request of an interested state or federal agency under 8 U.S.C. § 1184(l) (a "clinical waiver"). As described *infra*, unlike the other J-1 waiver categories, a clinical waiver includes completing a three-year term of employment with an approved health facility or health care organization in a medically underserved area. If a waiver applicant chooses this type of waiver but they fail to fulfill the three-year term of service, they become subject to the foreign residence requirement once again by operation of law. All other J-1 waiver categories immediately waive the foreign residence requirement with no following conditions. Several months before completing her graduate medical education exchange program, Dr. Trilleras received a clinical waiver approval.

5.    Almost two months later, she married Mr. Liao and became eligible for an exceptional hardship J-1 waiver application. Under advice of previous counsel, she decided to decline her employment contract with an approved health care organization and filed an exceptional hardship waiver application which USCIS received on August 12, 2024. In doing so, she re-subjected herself to the foreign residence requirement and lost the opportunity to pursue the benefit of her approved clinical waiver.

6.    USCIS issued a Request for Evidence ("RFE") asking for additional substantive eligibility documentation, raising the issue of the above-mentioned State Department's restrictive policy, and advising that Dr. Trilleras should "cancel" or "terminate" her previous waiver

3

application, despite there being no legal mechanism for either her or the agencies to do so. Plaintiffs responded with responsive evidence and expressed Dr. Trilleras' willingness to withdraw the previously approved clinical waiver.

7.      Over nineteen months after its receipt, USCIS denied her exceptional hardship waiver application on the basis that the State Department would not review or recommend the waiver under its unwritten rule. Thereby, USCIS ignored its own duty to determine exceptional hardship waiver eligibility, relied on a separate agency's supposed rule in issuing its own decision—potentially on consultation with the State Department—and couched its reasoning by claiming that "further review of the current waiver application will not be possible" as Dr. Trilleras had not shown that her previously approved waiver had been cancelled. USCIS did not elaborate on how the clinical waiver could be canceled despite being the agency tasked by statute as the final arbiter of J-1 waiver applications.

8.      Plaintiffs have significant interest in proper adjudication of their waiver application. Dr. Trilleras is a board-certified nephrologist with over thirteen years of medical training; since completion of her nephrology fellowship in June 2024, she has been unable to practice medicine as she is without a basis to obtain work authorization. She has dedicated her life to pursuing a career in medicine, and the emotional and psychological toll of losing her ability to practice has been severe. As a result, Mr. Liao is the only source of income for their family, a stress which has compounded as Dr. Trilleras recently gave birth to the couple's first child.

4

9.     Additionally, Dr. Trilleras stayed beyond the grace period provided after her completion of her exchange program.[1] Due to fear of current immigration enforcement, she lives in fear of removal proceedings or other enforcement action and has become increasingly isolated, to the extent that she does not travel domestically to visit family and she is unable to depart and visit her parents who reside in Canada.

10.     If Dr. Trilleras were forced to depart the United States, Mr. Liao would face the hardships proven in Dr. Trilleras' waiver application. Further, his parents are elderly with chronic medical conditions including hypertension, pre-diabetes, and high cholesterol. They benefit from the medical support that Dr. Trilleras provides and the critical help with daily activities that Mr. Liao provides them as they live nearby. Neither would be able to provide this necessary support were Dr. Trilleras to return to her home country.

11.     As described, this agency action threatens to strip the ability of certain J-1 physicians from seeking a waiver of the foreign residence requirement. USCIS' decision and the State Department's unwritten rule are arbitrary and capricious, *ultra vires*, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, without observance of procedure required by law, and must be set aside.

---

[1] Nonimmigrants admitted for duration of status ("D/S"), such as J-1 exchange visitors, do not automatically accrue "unlawful presence" under 8 U.S.C. § 1182(a)(9)(B)(ii) merely by violating their nonimmigrant status. Under longstanding agency policy, a D/S nonimmigrant begins to accrue unlawful presence only on the day after: (1) USCIS formally determines a status violation while adjudicating a request for an immigration benefit, or (2) an immigration judge orders the individual excluded, deported, or removed. *See Guilford Coll. v. Wolf*, 1:18CV891, 2020 WL 586672 (M.D.N.C. Feb. 6, 2020) (permanently vacating and enjoining a 2018 USCIS policy memorandum that attempted to trigger retroactive unlawful presence from the date of a status violation); Memorandum from Paul W. Virtue, Acting Exec. Assoc. Comm'r, INS, Section 212(a)(9)(B) Relating to Unlawful Presence (Sept. 19, 1997).

## II.    JURISDICTION

12.    As stated *supra*, this is an action challenging the Defendants' adjudication of Plaintiffs' immigration benefit application. This action arises out of Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101-1537, and the APA, §§ 551-559, 701-706.

13.    Subject matter jurisdiction is pursuant to 28 U.S.C. § 1331 and 8 U.S.C. § 1329, and 5 U.S.C. § 702. Moreover, this Court has the authority to grant affirmative relief under the APA. 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."). This Court may grant the requested declaratory and injunctive relief pursuant to the INA, the APA, 28 U.S.C. §§ 2201-2202, and 5 U.S.C. §§ 705 and 706. Jurisdiction is further conferred by 28 U.S.C. § 1651 to allow for any appropriate remedy.

14.    This Court has jurisdiction under the general federal-question statute because 28 U.S.C. § 1331 is the appropriate source of jurisdiction for claims under the APA so long as the claim arises under the Constitution or federal law. 28 U.S.C. § 1331 (saying that the plaintiff must assert a cause of action "arising under the Constitution, laws, or treaties of the United States"); *Califano v. Sanders*, 430 U.S. 99, 105-07 (1977) (finding that district courts have jurisdiction under the APA in conjunction with 28 U.S.C. § 1331 to review agency action); *Oryszak v. Sullivan*, 576 F.3d 522, 525-26 (D.C. Cir. 2009) (holding that § 1331 confers jurisdiction on courts to review agency action under the APA).

15.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States. This case presents federal questions regarding whether Defendants have complied with their statutory obligations under 8 U.S.C. §§ 1182(e), 1184(l), 5

U.S.C. § 553, and their regulatory duties under 8 C.F.R. § 212.7(c) and 22 C.F.R. § 41.63(b). Specifically, Plaintiffs challenge USCIS' decision to deny Dr. Trilleras' immigration benefit application under these federal laws in the claims set forth below.

16.    The INA's discretionary review bar, 8 U.S.C. § 1252(a)(2)(B)(ii), does not prohibit judicial review of these claims. This provision covers *only* those decisions or actions by the Attorney General or the Secretary of Homeland Security that are explicitly "specified under this subchapter to be in the discretion of the Attorney General or Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii); *see Kucana v. Holder*, 558 U.S. 233,  252-53 (2010) (holding that § 1252(a)(2)(B)(ii) does not strip jurisdiction where Congress did not expressly delegate authority to do so in the statute at issue by clear and convincing evidence, to dislodge the APA's presumption of judicial review of agency actions); *see also Wilkinson v. Garland*, 601 U.S. 209, 218 (2024) (permitting judicial review of initial or threshold statutory eligibility agency determinations that occur prior to the final exercise of statutory discretion); *Mukantagara v. Noem*, 164 F.4th 765, 771-74 (10th Cir. 2026) (applying and extending *Wilkinson*'s framework to a decision under § 1252(a)(2)(B)(ii) to find that federal district courts have subject matter jurisdiction to review first-step nondiscretionary eligibility immigration agency decisions or actions, that the word "determines" does not reveal discretion, and distinguishing the Supreme Court's decision on *Bouarfa v. Mayorkas*, 604 U.S. 6 (2024), as not applying to INA statutes that involve multiple steps in the adjudication process). In other words, this jurisdiction stripping provision applies strictly to ultimate, substantive choices explicitly committed to agency discretion by the text of the statute itself and does not insulate an agency's refusal to engage in a mandatory adjudication process. *Kucana*, 558 U.S. at 252-53.

17.   Here, Plaintiffs are not asking the Court to re-weigh the facts or override USCIS' assessment of what constitutes exceptional hardship; instead, they are challenging a pure legal error: the agencies' extra-statutory adoption of an unauthorized and categorical presumption that a prior J-1 waiver application bars a subsequent waiver application. Under 8 U.S.C. § 1182(e), USCIS is legally required to make a threshold determination as to whether the applicant has established exceptional hardship. While the ultimate grant of the waiver is discretionary, the procedural obligation to complete a merits review and render a determination is entirely nondiscretionary. 8 U.S.C. § 1182(e) (saying "after he *has determined*" if exceptional hardship exists).

18.   Because USCIS issued a decision explicitly saying it was denying Dr. Trilleras' application based on an unwritten and unpromulgated State Department rule and not on the merits, the agency abdicated its statutory duty to make the threshold determination under 8 U.S.C. § 1182(e). Since Congress did not explicitly name the authority for USCIS to deny for such a reason, 8 U.S.C. § 1252(a)(2)(B)(ii) does not strip this Court's jurisdiction to review its decision.

19.   Additionally, this Court retains jurisdiction to review the preliminary legal and procedural frameworks through which an agency operates, despite whether the ultimate decision is found unreviewable. Under binding D.C. Circuit precedent, even if a statute makes a final decision unreviewable, there also must be clear and convincing evidence that Congress intended to permit agencies to violate their own binding regulations and precedents to prevent judicial review under § 1252(a)(2)(B)(ii). *Castaneira v. Noem*, 138 F.4th 540, 549 (D.C. Cir. 2025) (citing *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020); *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 492 (1991)).

8

20.    In *Castaneira*, an immigrant visa petitioner challenged USCIS' adjudication under 8 U.S.C. § 1154(a)(1)(A)(viii)(I), which grants USCIS "sole and unreviewable discretion" to determine whether "the citizen poses no risk to the alien with respect to whom a petition . . . is filed." *Castaneira*, 138 F.4th at 542. Instead of evaluating the facts under the standard "preponderance of the evidence" burden of proof, USCIS unilaterally imposed an unwritten, extra-statutory requirement that the petitioner prove "no risk" "beyond any reasonable doubt." *Id.* at 545. The D.C. Circuit found that such clear and convincing evidence did not exist to prevent a federal district court from reviewing whether USCIS had properly applied its own evidentiary standard under binding administrative case law. *Id.* (citing *Matter of Chawathe*, 25 I. & N. Dec. 369 (AAO 2010)). "[I]f there was a standard in place, then the agency was required to follow it." *Id.* at 551.

21.    Concerning the issue at bar, the statutory language in § 1182(e) is textually far less restrictive than the statute at issue in *Castaneira*, which allocated "sole and unreviewable discretion" instead of the "may waive" language present in the J-1 waiver statute. *Compare* 8 U.S.C. § 1154(a)(1)(A)(viii)(I) *with* 8 U.S.C. § 1182(e). Moreover, the claims made below are similar to the claims made in *Castaneira*, as the Plaintiffs are simply asking that USCIS follow the statutory and regulatory requirements to make an exceptional hardship determination. *See* 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c); 22 C.F.R. § 41.63(b). This statute and these regulations lay out a strict, sequenced process for evaluating exceptional hardship; inventing a presumption that treats a prior unutilized and successful waiver application as a completely prohibitive factor violates the structure of the law. 8 C.F.R. § 212.7(c). *Castaneira* provides an added framework for this Court to review this precise lack of legal conformity. *Castaneira*, 138 F.4th at 549.

### III.    VENUE

22.    Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e)(1)(A) because this is an action against officers and agencies of the United States in their official capacities, brought in the district where a defendant in the action resides, Washington, D.C.

23.    The Defendant Markwayne Mullin is sued in his official capacity as the Secretary of the U.S. Department of Homeland Security, a U.S. federal agency, and is a resident of Washington, D.C. The Defendant Joseph B. Edlow is sued in his official capacity as the Director of U.S. Citizenship and Immigration Services, a U.S. federal agency, and is a resident of Camp Springs, Maryland. The Defendant Carrie M. Selby is sued in her official capacity as Acting Associate Director of Service Center Operations of U.S. Citizenship and Immigration Services, a U.S. federal agency, and is a resident of Camp Springs, Maryland. The Defendant Marco A. Rubio is sued in his official capacity as the Secretary of the U.S. Department of State, a U.S. federal agency, and is a resident of Washington, D.C. The Defendant Jennifer L. Weronski is sued in her official capacity as the Chief of the U.S. Department of State's Waiver Review Division, and is a resident of Washington, D.C.

### IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

24.    Under the Supreme Court's decision in *Darby v. Cisneros*, APA plaintiffs are not required to exhaust optional administrative remedies where appeal to a "superior agency authority" is not expressly required by statute or regulation makes the action inoperable during appeal. 509 U.S. 137, 154 (1993). Under applicable regulations, there is a general right to make an administrative appeal to USCIS' Administrative Appeals Office, but the denial remains in effect during the appeal and is not expressly mandatory under § 1182(e), as indicated in the

10

March 26, 2026, decision to deny the Plaintiffs' waiver application. 8 U.S.C. § 1182(e) (including no express need to make an appeal on a denied waiver application); 8 C.F.R. §§ 103.3(a)(1)(ii) (saying that certain unfavorable decisions on applications *may* be appealed); 212.7(c)(11) (noting that if an application is denied that the applicant shall be notified of the right of appeal in accordance with part 103 and not making the decision inoperable during appeal). Thus, Plaintiffs have no exhaustion requirement, and this action is properly before this Court.

## V.    PARTIES

25.    Plaintiff Angelica Paola Trilleras Gomez, MD, is a citizen of Colombia and a resident of California.

26.    Plaintiff Jonathan Alan Liao is a citizen of the United States of America, a resident of California, and the spouse of Angelica Paola Trilleras Gomez, MD.

27.    Defendant Markwayne Mullin is the United States Secretary of the Department of Homeland Security, an agency of the United States. He is named in his official capacity. His address is: 245 Murray Lane SW, Washington, D.C. 20528.

28.    Defendant Joseph B. Edlow is the Director of the United States Citizenship and Immigration Services, which is part of the Department of Homeland Security and is an agency of the United States. He is named in his official capacity. His address is: 5900 Capital Gateway Drive, Camp Springs, Maryland 20588.

29.    Defendant Carrie M. Selby is the Associate Director of the Service Center Operations of the United States Citizenship and Immigration Services, which is part of the Department of Homeland Security and is an agency of the United States. She is named in her official capacity. Her address is: 5900 Capital Gateway Drive, Camp Springs, Maryland 20588.

30.     Defendant Marco A. Rubio is the United States Secretary of State, the head of the United States Department of State, an agency of the United States. He is named in his official capacity. His address is: 2201 C Street NW, Washington, D.C. 20520.

31.     Defendant Jennifer L. Weronski is the Chief of the Waiver Review Division of the Bureau of Consular Affairs of the United States Department of State, an agency of the United States. This office is responsible for making recommendations on waivers pursuant to 8 U.S.C. 1182(e). She is named in her official capacity. Her address is: 2201 C Street NW, Washington, D.C. 20520.

## VI.    DELEGATION OF AUTHORITY TO GRANT A WAIVER

32.     To understand the § 1182(e) waiver application process and the chain of decision-making, an initial explanation of Congress's delegation of authority under the INA is necessary, because the terms used in the statute to describe the decision-makers—e.g., the "Director" of the United States Information Agency, "Commissioner" of the Immigration and Nationality Service, and "Attorney General"—are incorrect due to the passage of subsequent legislation.

33.     The "Director," as named by Section 1182(e), should be read instead as the State Department's Waiver Review Division. "Director" refers to the Director of the United States Information Agency ("USIA") whose duties under the statute have since been replaced by the State Department. *See* 22 U.S.C. §§ 6531-6532 (abolishing the USIA and transferring the majority of USIA's functions to the State Department). By regulation, the State Department created and established Waiver Review Division within its Bureau of Consular Affairs to make recommendations on waiver applications made under § 1182(e). 22 C.F.R. § 41.63.

34.     "Commissioner of Immigration and Naturalization" and "Attorney General," as mentioned in § 1182(e), should be replaced with the Director of USCIS.

35.    The Homeland Security Act of 2002 ("HSA") and subsequent legislation dissolved the Immigration and Naturalization Service ("INS") (headed by the Commissioner of Immigration and Naturalization) and transferred INS's functions to DHS. *See* HSA, Pub. L. No. 107-296, 116 Stat. 2135, 2142 (2002) (establishing DHS); 6 U.S.C. § 291 (abolishing the INS); *see also* 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens . . . ."). USCIS administers the immigration laws, including adjudication of waiver requests from J-1 visa holders. 6 U.S.C. § 271(b) (transferring the INS Commissioner's functions to the Director of USCIS—including "adjudications performed at service centers"—and establishing that USCIS reports to DHS); 8 U.S.C. § 1101(17) ("The term 'immigration laws' includes this chapter and all laws, conventions, and treaties of the United States relating to the immigration, exclusion, deportation, expulsion, or removal of aliens."); 1 USCIS-PM E.1.C. (detailing USCIS' legal authorities); DHS Delegation No. 0150.1 para. II.h (delegating USCIS the authorities under 8 U.S.C. § 1103(a)(1)).

36.    The HSA also transferred authority and functions of the Attorney General under the INA—including authority under § 1182(e)—to DHS. *See* Pub. L. No. 108-7, § 105, 117 Stat. 11, 531 (2003), (amending HSA by substituting "Attorney General" with "Secretary of Homeland Security" for immigration authorities[2]); *see also* 22 C.F.R. § 41.63(a)(2) (using almost the exact language from § 1182(e) but substituting "Commissioner of Immigration and Naturalization" and "Attorney General" with "Secretary of Homeland Security"). Accordingly, authority over immigration benefits administration previously held by the Attorney General now lies with DHS, and, in turn, USCIS.

---

[2] Except for the administration of the immigration court system. *See* 8 U.S.C. § 1103(g)(1).

37.    Given the above, the statute for all practical purposes should be read as follows:

[U]pon the favorable recommendation of the [Waiver Review Division], pursuant to the request of an interested United States Government agency (or, in the case of an alien described in clause (iii), pursuant to the request of a State Department of Public Health, or its equivalent), or of the [Director of USCIS] after he has determined that departure from the United States would impose exceptional hardship upon the alien's spouse or child (if such spouse or child is a citizen of the United States or a lawfully resident alien) . . . the [Director of USCIS] may waive the requirement of such two-year foreign residence abroad in the case of any alien whose admission to the United States is found by the [Director of USCIS] to be in the public interest except that in the case of a waiver requested by a State Department of Public Health, or its equivalent, or in the case of a waiver requested by an interested United States Government agency on behalf of an alien described in clause (iii), the waiver shall be subject to the requirements of section 1184(l) of this title . . . .

8 U.S.C. § 1182(e).

## VII.    THE FOREIGN RESIDENCE REQUIREMENT AND THE WAIVER PROCESS

38.    Many foreigners come to the United States as J-1 exchange visitors ("J-1's" or "J-1 visa holders"). This is a nonimmigrant (temporary) classification, as set forth in 8 U.S.C. § 1101(a)(15)(J).

39.    Under 8 U.S.C. § 1182(e), there are three ways that a J-1 can become subject to the two-year foreign residence requirement: (1) the J-1 program is funded by the United States government or the government of the J-1's nationality or last residence; (2) the J-1 is engaged in training that is on the "Skills List" for their home country; or (3) the J-1 is coming to the United States for graduate medical education. The foreign residence requirement prohibits a J-1 from doing certain things, such as applying for lawful permanent resident status (green card), an immigrant visa, or changing status to an H or L nonimmigrant visa, until they have either

14

fulfilled the requirement by spending two years in their country of nationality or last residence, or until they have obtained a waiver of the requirement. 8 U.S.C. § 1182(e).

40.     Unlike virtually all other waiver application types in immigration law, this kind of waiver application is not adjudicated solely by USCIS. *Id.* Instead, the waiver can be granted only if the State Department issues a favorable recommendation, as described above. *Id.*

41.     There are four ways for a J-1 to pursue a waiver of the foreign residence requirement: (1) pursuant to a request of an interested U.S. Government agency (a general "IGA waiver") or State Department of Public Health or federal equivalent (a "clinical waiver"); (2) a determination by USCIS that the departure of the applicant would impose exceptional hardship upon the applicant's United States citizen or lawful permanent resident spouse or child[3] (an "exceptional hardship waiver"); (3) a determination by USCIS that the applicant would be subject to persecution on account of race, religion, or political opinion if they departed (a "persecution waiver"); or (4) where the foreign country of the applicant's nationality or last residence has furnished a statement that it has no objection to a waiver of the requirement (a "no objection waiver"). 8 U.S.C. § 1182(e).

42.     As it pertains to this action, two statutes govern the waiver pathways for which Dr. Trilleras has applied. Her initial clinical waiver is controlled jointly by the processes laid out in §§ 1182(e) and 1184(l). 8 U.S.C. §§ 1182(e) (permitting an applicant who "came to the United States or acquired such status in order to receive graduate medical education or training" to apply for a waiver of the foreign residence requirement "pursuant to the request of a State Department of Public Health, or its equivalent"); 1184(l) (establishing that an interested state or federal agency may request a waiver on behalf of such an applicant and setting out the eligibility and

---

[3] Commonly referred to as a "qualifying relative."

process requirements). Her second waiver application—and the one at issue here—is based on her marriage to a citizen of the United States. 8 U.S.C. § 1182(e) (creating the eligibility and process requirements for an exceptional hardship waiver application). These pathways are respectively described below.

### A.    The J-1 Clinical Waiver Application Process

43.    The clinical waiver application process involves two steps: (1) the State Department considers whether to make a favorable recommendation upon the request of an interested federal government agency ("IGA") or an authorized State Department of Public Health (commonly referred to as the "Conrad 30" program as each state is limited to thirty yearly slots); and (2) upon a favorable recommendation, USCIS may waive the requirement so long as the application meets the requirements listed under § 1184(l). 8 U.S.C. §§ 1182(e); 1184(l).

44.    To satisfy the strict statutory eligibility criteria under § 1184(l), the applicant must provide the following: (1) a formal request by the IGA or state Conrad 30 program; (2) a bona fide offer of full-time employment at an approved health facility or health care organization; (3) an agreement to practice medicine at the designated facility for a continuous and uninterrupted period of not less than three years and that such employment will begin within ninety days of receiving the final waiver approval; (4) a promise to practice medicine exclusively in areas designated by the Secretary of Health and Human Services as having a shortage of healthcare professionals during that period, save for a few exceptions; and (5) a written statement sent directly to the State Department from the government of a foreign country confirming it has "no objection" to the applicant receiving a waiver if the applicant is contractually obligated to return to that country. 8 U.S.C. § 1184(l)(1).

16

45.    In addition, all applicants for a J-1 waiver must fill out an electronic Form DS-3035 on the State Department's website. 22 C.F.R. § 41.63(e)(3)(i). After completing the electronic Form DS-3035, the State Department's website generates (1) a "Waiver Review Division Case Number," (2) a "Waiver Review Division Barcode Page," (3) a "Third Party Barcode Page," (4) an electronic DS-3035 in PDF format with the applicant's information, (5) Supplementary Applicant Information Pages (if necessary), and (6) a "Packet Assembly Checklist" and "Instruction Sheet."

46.    All applicants for a J-1 waiver must pay a $120 filing fee to the State Department for the DS-3035.

47.    The IGA or state Conrad 30 program must submit the application materials and fee directly to the State Department's Waiver Review Division ("WRD"), along with copies of all the applicant's Forms DS-2019 ("Certificate of Eligibility for Exchange Visitor (J-1) Status") and curriculum vitae. 22 C.F.R. § 41.63(e)(3); 8 C.F.R. § 212.7(c)(9).

48.    Once filed, the WRD must review the program, policy, and foreign relations aspects of the application and forward its recommendation to USCIS. 22 C.F.R. § 41.63(e)(4).

49.    Then, USCIS will issue a receipt notice with its own USCIS case number and determine whether eligibility has been met under § 1184(l) and, if so, exercises its discretion to grant or deny the waiver application. 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c)(9). If the WRD made an unfavorable recommendation, USCIS must deny the application. 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c)(11).

50.    If the clinical waiver application is approved, then the applicant's employer may petition to change their status from J-1 to H-1B—which USCIS also has the discretion to

17

approve or deny—so that the applicant has work authorization to begin the three-year contract. 8 U.S.C. § 1184(l)(2).

51.    Importantly, the applicant's obligations under § 1182(e) are continuous for the three-year period and the foreign residence requirement is not officially waived until the applicant fulfills those obligations. 8 U.S.C. § 1184(l)(2)(B).

52.    And, if the applicant fails to fulfill the requirements under the clinical waiver application per § 1184(l) or their employment "ceases to benefit the public interest" at any time in the three-year period, the foreign residence requirement will be reinstated upon them by operation of law. 8 U.S.C. § 1184(l)(3).

### B.    The J-1 Exceptional Hardship Waiver Application Process

53.    For exceptional hardship waiver applications, the main waiver application is filed at a designated USCIS location.[4] The application is filed on Form I-612 with accompanying evidence and a $1,100 filing fee. 8 C.F.R. § 106.2(a)(36). A USCIS service center or the Service Center Operations Directorate will then issue a receipt notice with a USCIS case number.

54.    At baseline, the applicant for an exceptional hardship waiver must provide: (1) a certificate of marriage between the applicant and their spouse and proof of legal termination of any previous marriages; (2) the birth certificate of any child; (3) evidence of the citizenship or lawful permanent resident status of the qualifying relative; and (4) a signed and dated statement by the applicant that gives a detailed explanation of their belief that compliance with the foreign residence requirement would impose exceptional hardship on their qualifying relative to include

---

[4] USCIS infrequently changes the filing location for exceptional hardship and persecution waiver applications; at present, they must either be mailed to the Elgin or Phoenix Lockboxes depending on the applicant's state of residence. Formerly, these were filed directly with the USCIS California or Texas Service Centers.

incomes and savings, medical certificates in layman's terms from a qualified physician on the nature and effect of the illness and prognosis, if applicable. 8 C.F.R. § 212.7(c)(6)-(7).

55.    As noted in the previous subsection, the applicant must also fill out a Form DS-3035 which must be submitted separately to the State Department along with the $120 filing fee. This will also generate a WRD case number.

56.    If USCIS—after reviewing the I-612 and evidence—determines that compliance would impose exceptional hardship on a qualifying relative, USCIS must send a copy of its determination and a "summary of details" of the expected exceptional hardship to the WRD. 22 C.F.R. § 41.63(b)(2)(i). If the USCIS adjudicator decides that there is a fundamental lack of evidence—e.g., the applicant has not shown that they are subject to the requirement, that they have a qualifying relationship with a U.S. citizen, or that there would be an exceptional hardship—the adjudicator will issue a RFE. 8 C.F.R. § 103.2(b)(8) (concerning the adjudication of immigration benefit requests and giving discretion to adjudicators to issue a request for missing evidence); 2 USCIS-PM D.4.B.1. ("If the applicant fails to provide such evidence, the officer issues a Request for Evidence . . . .").

57.    In turn, the WRD will review the "program, policy, and foreign relations" aspects of the case and send its recommendation to USCIS. 22 C.F.R. § 41.63(b)(2)(ii). The WRD also has the authority to request the opinion of the exchange visitor's sponsoring program on the applicant getting a waiver of the two-year requirement. *Id.*

58.    If the WRD's recommendation is unfavorable, USCIS must deny the waiver application. 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c)(11).  If the recommendation is favorable, USCIS will then make a finding on whether the applicant's admission to the United States would

be in the public interest. 8 U.S.C. § 1182(e). The ultimate decision by USCIS on whether to grant the waiver at this stage is discretionary. *Id.*

## VIII.   FACTUAL ALLEGATIONS

59.     As mentioned above, Dr. Trilleras is a citizen and national of Colombia. Her husband, Mr. Liao, is a citizen of the United States.

60.     Dr. Trilleras first entered the United States in J-1 status on May 27, 2019, in the "alien physician" category to begin a residency program in internal medicine at Holy Cross Hospital and the University of Miami Miller School of Medicine in Fort Lauderdale, Florida.

61.     This admission made her subject to § 1182(e)'s foreign residence requirement as she was admitted under 8 U.S.C. § 1101(a)(15)(J) and "came to the United States or acquired such status in order to receive graduate medical education or training." 8 U.S.C. § 1182(e).

62.     She graduated from residency in June 2022 and began a fellowship in nephrology at the University of Southern California's Keck School of Medicine and Los Angeles General Medical Center in Los Angeles, California.

63.     In the final year of her exchange program, she applied for and received a clinical waiver approval on March 27, 2024, through the Conrad 30 waiver program under 8 U.S.C. § 1184(l), USCIS Case Number EAC2414450495.

64.     As part of the process discussed above, the State Department had made a favorable recommendation on Dr. Trilleras' clinical waiver on March 12, 2024. The State Department had assigned a WRD Case Number 1875760.

65.     As explained previously, § 1184(l) requires not just that clinical waiver applicants receive a waiver, but they must also change to H-1B status and complete a three-year term of

full-time employment at an approved health facility or health care organization in a geographical area having a shortage of health care professionals. 8 U.S.C. § 1184(l)(1)(C)-(D).

66.    Dr. Trilleras had an offer to work as a nephrologist with a medical group serving Imperial and Riverside counties in southern California which USCIS had determined was in the public interest and in conformance with § 1184(l). However, in April 2024, she decided not to pursue employment with the medical group and requested that her clinical waiver be withdrawn. The medical group responded that the waiver had been approved and asked whether Dr. Trilleras wanted to pursue filing of an H1-B petition. Dr. Trilleras advised that she did not want to pursue the filing of an H1-B petition to change her status per 8 U.S.C. §§ 1101(a)(15)(H) and 1184(l). These actions rendered her clinical waiver moot by operation of law, and she remained in J-1 status and subject to the foreign residence requirement. 8 U.S.C. § 1184(l)(3)(A).

67.    She married Mr. Liao on May 20, 2024, and graduated from her fellowship the following month on June 30, 2024, which concluded her exchange program. Although her grace period expired on July 30, 2024, she is not unlawfully present.[5] 8 C.F.R. § 214.2(j)(1)(ii).

68.    Instead of continuing to pursue completing the requirements for the clinical waiver, she chose to pursue an exceptional hardship waiver based on her marriage to a United States citizen, grounded on medical, psychological, career disruption, cultural, and financial exceptional hardships, along with hardships to third persons. 8 U.S.C. § 1182(e).

69.    In so doing and on the advice of previous counsel, she believed in good faith that filing this new waiver application would provide some form of protected or tolled immigration status while she awaited a decision. *But see* 8 U.S.C. § 1182(e) (enumerating restrictions on

---

[5] To her knowledge and under current law, Dr. Trilleras has not begun accruing unlawful presence time as neither USCIS nor an immigration judge has formally made a status violation determination. *See supra* note 1.

21

nonimmigrant and immigrant status only without providing that a pending application provides authorized stay); § 1182(a)(9)(B)(ii) (noting that the Attorney General may authorize a period of stay); 7 USCIS-PM B.3(E) (saying that a pending application does not automatically afford protection against removal for out-of-status applicants); U.S. CITIZENSHIP & IMMIGR. SERVS., *Unlawful Presence and Inadmissibility*, https://www.uscis.gov/laws-and-policy/other-resources/ unlawful-presence-and-inadmissibility#:~:text=In%20addition%20to%20these%20exceptions ,by%20the%20secretary%20of%20homeland (last accessed June 17, 2026) (stating, under the dropdown selection "Accruing Unlawful Presence," USCIS considers those in the circumstances listed in Adjudicator's Field Manual, Chapter 40.9.2 as in a period of unauthorized stay); U.S. CITIZENSHIP & IMMIGR. SERVS., Adjudicator's Field Manual Ch. 40.9.2(b)(3) (listing several categories of noncitizens with pending applications but not including J-1 waiver applications).

70.    Dr. Trilleras filed this second waiver application through prior counsel on or around August 5, 2024. As indicated on a receipt notice, USCIS received her second waiver application and $1,100 fee on August 12, 2024. USCIS assigned this second application USCIS Case Number SRC2426150199.

71.    Although prior counsel filed a Form DS-3035 with a different case number, the State Department assigned Dr. Trilleras' exceptional hardship waiver application the same case number it previously allocated to her clinical waiver application, WRD Case Number 1875760.[6] The State Department marked her exceptional hardship waiver as received on August 27, 2024.

72.    In her exceptional hardship waiver application, Dr. Trilleras showed that Mr. Liao would face the following: (1) medical hardship based on his diagnosis of osteoarthritis which

---

[6] This is standard State Department practice so that all J-1 waiver applications are viewable in one file.

limits his mobility and could require a number of procedures—including ankle fusion or replacement—and regular monitoring by podiatry and orthopedic surgery; (2) psychological hardship due to loss of emotional support systems in the United States and his history of emotional and mental instability that could reoccur if separated from his spouse; (3) hardship due to disruption to his fifteen-year career as a legal contract administrator at a major aerospace and defense company with sensitive federal contracts which requires him to work within the United States because of his United States government issued top secret security clearance; (4) cultural hardship as he does not speak Spanish and has never lived outside of the United States; (5) financial hardship due to Dr. Trilleras' expected income in Colombia, her immediate inability to obtain the ability to practice medicine in Colombia, and the costs of supporting two households in two different countries; and (6) hardship to third persons as Mr. Liao and Dr. Trilleras are the only relatives close enough to care for his aging parents.

73.    She also included the key regulatory requirements, including a copy of Mr. Liao's birth certificate as evidence of his citizenship, a copy of their certificate of marriage, and a signed and dated statement alleging the exceptional hardships. 8 C.F.R. § 212.7(c)(6)-(7).

74.    On December 9, 2025, USCIS issued a RFE, asking for proof of Dr. Trilleras' first entry to the United States in J-1 status and a statement on her current status, and substantive merits questions on her hardship claims, including requests for: evidence of hardships in both travel alternatives—whether Mr. Liao joined her in Colombia or remained in the United States— and additional evidence that Mr. Liao required surgery or ongoing medical care, that his employer could not retain him if he moved temporarily to Colombia, that Dr. Trilleras had attempted to secure employment in Colombia, that Mr. Liao had received a formal psychological diagnosis or required ongoing mental health treatment, updated financial documentation, and

23

proof that Mr. Liao's parents would face hardship if he left the United States during the period of

fulfillment.

75.    Additionally, the RFE also contained the following at the end:

**Multiple Filings**

Records indicate that you filed a State Waiver Application[7] on March 19, 2024, which USCIS approved on March 22, 2025 [sic][8], and therefore you are no longer subject to [sic] Foreign Residence Requirement of section 212(e) of the Immigration and Nationality Act. Please advise if you would like to withdraw this pending application *or terminate the State Application* as *the Department of State will not review an open I-612 application if you have an approved State application*.

If you are going to *request to cancel your State Application* and continue with this application, please submit the evidence requested above *along with evidence to show you have canceled your previously approved waiver*.

If you would like to withdraw this application *and continue with the approved State Application*, please submit a statement advising you would like to withdraw this application.

Please be advised that *once you cancel your previously approved waiver* you will once again be subject to the Foreign Residence Requirement of section 212(e) of the Immigration and Nationality Act. Furthermore, there is no guarantee the Department of State will approve your current waiver request and *once you cancel your previously approved waiver*, you will not be able to request to have it reinstated if your current waiver does not receive a favorable recommendation.

(emphasis added).

76.    There are several noteworthy aspects to this section of the RFE which reveal

USCIS' misunderstanding of the law as currently written.

---

[7] It is unclear why USCIS is using the phrase "State Waiver Application" to refer to a clinical waiver application filed under § 1184(l).

[8] The date that USCIS references here is incorrect, as the approval notice for Dr. Trilleras' clinical waiver is dated March 27, 2024.

77.     First, the RFE references a State Department rule which seems to completely foreclose an applicant with a previously approved J-1 waiver application from obtaining a recommendation—*whether favorable or unfavorable*—on a subsequent J-1 waiver application; as argued below, this rule should be vacated.

78.     Second, it posits that Dr. Trilleras has the legal ability to request to "terminate" or "cancel" an already approved waiver application, which is incorrect. Per the agency's own regulation, an applicant seeking an immigration benefit "may *withdraw* a benefit request at any time *until a decision is issued* by USCIS." 8 C.F.R. § 103.2(b)(6) (emphasis added) (permitting only immigrant or nonimmigrant *petitioners* to withdraw an approved *petition* as an underlying basis for an application—such as Forms I-130 or I-140—"until the person is admitted or granted adjustment or change of status," which does not apply to applications). There is no statutory framework, regulatory provision, or administrative mechanism that gives a J-1 waiver applicant the legal ability to voluntarily cancel, withdraw, or terminate an already approved J-1 waiver under either 8 U.S.C. §§ 1182(e) or 1184(l). As discussed above, § 1184(l) does include a statutory default and reimposition of the foreign residence requirement which effectively voids the approved waiver but does not cause a legal termination of the approval as performance of the three-year contract is a necessary condition to waiving the foreign residence requirement. 8 U.S.C. § 1184(l)(3)(A). The very nature of the foreign residence requirement being reimposed by operation of law entails that it may be later waived on the same or other grounds. 8 U.S.C. § 1182(e).

79.     USCIS itself has narrow authority to *sua sponte* revoke its prior approval. 8 U.S.C. § 1155 (granting USCIS broad authority to revoke *immigrant petitions* only); 8 C.F.R. §§ 103.5(a)(5) (permitting USCIS to *reopen* on the motion of the service officer and only to give a

"favorable" or "unfavorable" *new decision* on the application and granting procedural protections to the applicant for unfavorable decisions); 103.5(a)(2) (mandating that motions to reopen contain *new facts* showing ineligibility existing at the time of the decision). Further, the State Department lacks any statutory authority to overturn its prior recommendation as USCIS already executed its exclusive final authority on the waiver application. 8 U.S.C. § 1182(e).

80.     Third, this passage also suggests that the previous grant of Dr. Trilleras' clinical waiver absolved her of the foreign residence requirement. This is legally false as already explained above. 8 U.S.C. § 1184(l)(1)(C)-(D). Moreover, it would be legally impossible for Dr. Trilleras to withdraw her exceptional hardship waiver application and "continue" with her approved clinical waiver because of the statutory requirements for that waiver category. 8 U.S.C. § 1184(l)(1) (requiring the applicant to begin employment within ninety days of receiving the waiver). Since she did not petition to change to H-1B status or begin employment within the required ninety-day period, she is statutorily prohibited from relying on her clinical waiver approval.

81.     On or around February 13, 2026, Dr. Trilleras timely responded to the RFE through previous counsel. In her response, she responded to USCIS' evidence requests, to include: (1) Mr. Liao's new employer's testimony that he not be permitted to work from any location outside the United States due to compliance with International Traffic in Arms Regulations, 22 C.F.R. §§ 120-130; (2) additional financial hardship evidence detailing the couple's income, expenses, and home mortgage; (3) proof that Dr. Trilleras would need to undergo formal credential recognition to practice as an internist or nephrologist in Colombia— approximately six months of credentialing per specialty—that she had attempted to apply for an internist position at a Colombian medical institution which did not result in an employment offer,

and that general physicians in Colombia only earn about $16,000 annually before taxes; (4) the new fact that Dr. Trilleras was pregnant with a due date of June 4, 2026, and that due to her age and the subchorionic hematoma she suffered in the first trimester, she had a high-risk pregnancy and if she were to relocate outside of the United States their child's birth would be at greater risk; (5) a recent imaging report of Mr. Liao's moderate to severe osteoarthritis and a letter from his treating orthopedic surgeon detailing his prognosis and ongoing treatments; (6) evidence that Mr. Liao had been diagnosed with Attention-Deficit/Hyperactivity Disorder ("ADHD") and had begun taking medication, and that a disruption of his normal routines would lead to increased stress and loss of executive functioning which would impact him in a variety of ways; (7) Dr. Trilleras' statement that she elected to proceed with her waiver application and that she wished to cancel her clinical waiver; (8) Dr. Trilleras' signed declaration, addressed to USCIS, expressing her intent to cancel the clinical waiver and requesting USCIS process the cancellation, as no other formal mechanism, form, or procedure for doing so exists under the law or was specified by the agency.

82.    Roughly a month later, USCIS issued a decision to deny Dr. Trilleras' waiver application on March 26, 2026.[9] *See* Ex. 1. It contained boilerplate language on J-1 exceptional hardship waiver applications and acknowledged receipt of the RFE response and its contents. *Id.* at 1-3. The denial also reiterated the above-quoted language verbatim on the prior clinical waiver and its termination and noted that Dr. Trilleras had advised that she wished to cancel that application in her RFE response. *Id.* at 2-3. It then said the following:

---

[9] In the undersigned counsel's experience, USCIS typically takes at least several months to issue an eligibility finding after issuing an RFE to consider the new evidence; the swiftness of this denial indicates a predisposition to deny Dr. Trilleras' waiver application not on the merits, but the indicated State Department rule.

> Records indicate that you filed a Waiver Application, which USCIS approved on March 22, 2024,[10] and therefore you are no longer subject to [sic] Foreign Residence Requirement of section 212(e) of the Immigration and Nationality Act.
>
> While you have submitted evidence in an effort of your claim, *you have not submitted evidence to show you have canceled your previously approved waiver* (EAC2414450495).
>
> As previously mentioned, *the Department of State will not review an open I-612 application if you have an approved waiver application*. As such, further review of the current waiver application will not be possible as *you have not submitted evidence to show your previously approved waiver has been canceled*.
>
> The applicant bears the burden of establishing that she qualifies for the benefit sought under the immigration laws. See *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). You have not met the burden of proof based on the current evidence submitted. Therefore, the application is denied.

*Id.* at 3-4 (emphasis added). The points mentioned above about the language in the RFE still stand as USCIS repeats the same content in this section of the decision.

83.    This decision wholly disregarded the Plaintiffs' evidence of waiver eligibility provided in their initial filing and in their RFE response.

84.    USCIS made no determination as to whether Dr. Trilleras qualified for a finding of exceptional hardship per § 1182(e). 8 U.S.C. § 1182(e).

85.    Instead, the agency issued its denial purely on a different agency's unwritten rule that lacks any basis in the law. *Id.*

86.    On April 3, 2026, Dr. Trilleras followed up with the medical group requesting confirmation that she did not enter into employment, did not begin employment and that it has no objection to the cancellation of the previously approved clinical waiver (USCIS Case No.

---

[10] Again, this date is incorrect; the approval notice for Dr. Trilleras' clinical waiver is dated March 27, 2024.

28

EAC2414450495). On June 3, 2026, the medical group responded, stating that although an offer was initially signed, Dr. Trilleras never began employment and it has no objection to the cancellation of the clinical waiver. The medical group agreed to provide a statement as needed.

87. Following the denial on the above basis, Dr. Trilleras gave birth to the couple's child on June 2, 2026.

88. Plaintiffs now bring this action under the APA.

## IX. FIRST CLAIM FOR RELIEF: VIOLATION OF APA, 5 U.S.C. § 706(2)

### (Failure to Adjudicate on the Merits and Mandating a Legal Impossibility)

89. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 88.

90. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

91. An agency action is arbitrary and capricious where the agency relies on factors Congress did not intend it to consider, entirely fails to consider an important aspect of the problem, offers an explanation that runs counter to the law or evidence, or when a reasonable explanation for the agency's decision cannot be discerned. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Additionally, "'no deference' is owed to an agency action that is based on an agency's 'purported expertise' where the agency's explanation for its action 'lacks any coherence'" and must be supported by "'reasoned decisionmaking.'" *Fox v. Clinton*, 684 F.3d 67, 74-75, 78-80 (D.C. Cir. 2012) (quoting *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006) and *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)) (disagreeing with the

State Department's interpretation of 8 U.S.C. § 1481(a) and holding that the agency's decision to deny a request for a Certificate of Loss of Nationality was entirely unreasonable under the statutory scheme or prior agency administrative precedent and therefore was arbitrary and capricious).

92.    Under 8 U.S.C. § 1182(e) and its implementing regulations at 8 C.F.R. § 212.7(c) and 22 C.F.R. § 41.63(b), Defendant USCIS has a mandatory and nondiscretionary statutory duty to review and adjudicate Form I-612 waiver applications on the merits to determine whether an applicant has established that compliance with the foreign residence requirement would impose exceptional hardship upon their qualifying relative.

93.    Defendant USCIS completely abdicated this statutory and regulatory duty by issuing its March 26, 2026, denial that was not based on a determination that the applicant had not met their burden of proof to show exceptional hardship. USCIS based its decision entirely on an alleged, unwritten rule of a separate agency, which purportedly refuses to make a recommendation on a pending Form I-612 application if a prior J-1 waiver was approved.

94.    While USCIS' RFE did seek additional evidence to evaluate Plaintiffs' waiver application, it failed to ultimately issue a decision on the merits of the application and instead found that "further review of the current waiver application will not be possible as you have not submitted evidence to show your previously approved waiver has been cancelled," and equated this to not achieving Plaintiffs' burden of establishing eligibility for the immigration benefit despite no statutory or regulatory requirement mandating such a cancellation. 8 U.S.C. § 1182(e) (setting forth the eligibility requirements and process for various J-1 waivers but *not* prohibiting potential applicants from seeking multiple waivers of the same or different type).

30

95.    Further, USCIS abused its discretion by conditioning the substantive adjudication of Plaintiffs' waiver application on Plaintiffs performing a legal impossibility—specifically, "cancelling" or "terminating" a previously approved and finalized J-1 clinical waiver. No statute, regulation, or policy provides any mechanism, form, or legal process for an applicant to retroactively revoke or cancel an official J-1 waiver approval. *See* 8 C.F.R. § 103.2(b)(6).

96.    USCIS' adjudication of Plaintiff's waiver application relied on a factor that Congress did not intend it to consider, something other than its determination of whether Plaintiffs had met their burden of proving that exceptional hardship existed in their case. 8 U.S.C. § 1182(e) (requiring that USCIS determine whether "departure from the United States would impose exceptional hardship upon . . ." the qualifying relative). In turn, USCIS also failed to consider exceptional hardship as an important aspect of the application.

97.    And, USCIS offered an explanation for its denial decision that ran counter to the evidence presented in Plaintiffs' original filing and in their RFE response, which complied with the requirements of the agency's own regulations. 8 C.F.R. § 212.7(c)(6)-(7).

98.    Therefore, USCIS' decision to deny Plaintiffs' waiver application lacked any coherence under § 1182(e)'s requirements and agency regulations, and is wholly lacking in reasoned decision-making. 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c); 22 C.F.R. § 41.63(b).

99.    As a result of USCIS' decision, Plaintiffs have suffered and continue to suffer harm, including the denial of a lawful adjudication of their waiver application.

100.    Accordingly, its March 26, 2026, decision to deny Plaintiffs' J-1 exceptional hardship waiver application is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and must be set aside. 5 U.S.C. § 706(2)(A).

31

**X.      SECOND CLAIM FOR RELIEF: VIOLATION OF APA, 5 U.S.C. § 706(2)**

**(Unlawful Delegation of Statutory Authority and Abdication of Duty)**

101.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 100.

102.    It is a foundational principle of administrative law in this Circuit that a federal agency may not subdelegate its core statutory decision-making authority to another agency or an outside entity—private or sovereign—absent express congressional authorization. *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004) (vacating the FCC's unlawful delegation of a statutory duty to state commissions).

103.    The J-1 waiver statutory framework mandates a strict, sequential division of authority between agencies. Under the applicable statute and regulations, Defendant USCIS is designated as the *sole* threshold arbiter of whether exceptional hardship has been established. 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c); 22 C.F.R. § 41.63(b). Only *after* USCIS makes a substantive, independent finding of exceptional hardship is it directed to transmit its decision to the State Department's Waiver Review Division for a recommendation. *Id.*

104.    By treating an alleged, unwritten State Department rule as a preemptive veto to halt its own duty, USCIS unlawfully subdelegated its statutory threshold authority to make the exceptional hardship determination. USCIS allowed the Defendant State Department to dictate the outcome of Plaintiffs' application before it ever reached the statutory recommendation phase. 8 U.S.C. § 1182(e).

105.    No statutory authorization exists to permit USCIS to outsource its threshold exceptional hardship review to the State Department, an agency that is not its subordinate. 8 U.S.C. § 1182(e) (demarcating each agencies' authorities within the J-1 waiver process).

32

USCIS's reliance on Department of State's unwritten 'secret law' to which the public is not privy is unlawful under the statutory division of authority.

106.    Therefore, USCIS abdicated its independent statutory role and unlawfully subdelegated its threshold adjudicatory authority by denying Plaintiffs' application based on the State Department's unwritten rule.

107.    As a result of USCIS' decision, Plaintiffs have suffered and continue to suffer harm, including the denial of a lawful adjudication of their waiver application.

108.    Accordingly, its March 26, 2026, decision to deny Plaintiffs' J-1 exceptional hardship waiver application is *ultra vires*, short of statutory right, without observance of procedure required by law, and must be set aside. 5 U.S.C. § 706(2)(A), (C)-(D).

## XI.    THIRD CLAIM FOR RELIEF: VIOLATION OF APA, 5 U.S.C. § 706(2)
### (Agency Action Ultra Vires and Contrary to Statutory Command)

109.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 108.

110.    Congress explicitly codified the precise legal consequences of a J-1 clinical waiver applicant failing to fulfill the terms of that waiver category. 8 U.S.C. § 1184(l)(3). If an individual fails to complete the statutory three-year service requirement, they will be re-subjected to the foreign residence requirement. *Id.*

111.    By returning the individual to being subject to the foreign residence requirement, Congress preserved all legal avenues provided within that subsection to resolve the requirement, explicitly including an application for a waiver based on exceptional hardship. 8 U.S.C. § 1182(e); *see Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)) (invoking the "cardinal canon of statutory construction that '[w]e must

33

read the statutes to give effect to each if we can do so while preserving their sense and purpose'").

112. According to the March 26, 2026, decision to deny Plaintiffs' waiver application, Defendant State Department maintains an unwritten, unpublished rule or practice of categorically refusing to review or permit the review of an open J-1 waiver application if the applicant was previously granted a waiver, even where a clinical waiver under 8 U.S.C. § 1184(l) was never utilized.

113. This unwritten rule effectively writes a permanent, non-statutory, 'secret law' restriction into the INA, entirely stripping individuals who fall back under the foreign residence requirement of 8 U.S.C. § 1182(e) of their statutory right to seek another type of J-1 waiver.

114. Federal agencies possess no inherent authority to create substantive restrictions or permanent bars out of whole cloth that directly undermine or alter the statutory scheme enacted by Congress. Courts must exercise independent judgment to ensure agencies stay within their statutory bounds, as the APA requires. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).

115. Thus, the State Department's unwritten rule directly contradicts the statutory mechanisms established in 8 U.S.C. §§ 1182(e) and 1184(l)(3).

116. As a result of the State Department's rule, Plaintiffs have suffered and continue to suffer harm, including the denial of a lawful adjudication of their waiver application.

117. Accordingly, the State Department's rule is *ultra vires*, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, without observance of procedure required by law, and must be set aside. 5 U.S.C. § 706(2)(A), (C)-(D).

34

## XII.    FOURTH CLAIM FOR RELIEF: VIOLATION OF APA, 5 U.S.C. § 706(2)

## (Procedural Invalidity and Binding Rulemaking Without Public Notice-and-Comment)

118.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 117.

119.    Under the APA, 5 U.S.C. § 553(b)-(c), federal agencies are strictly required to utilize formal public notice-and-comment rulemaking in a manner that "give[s] interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments . . . ." 5 U.S.C. § 553(c); *see also id.* § 553(b).

120.    The State Department's rule to refuse to make a recommendation on a J-1 waiver application when a previous application was granted is not a policy statement because it establishes a substantive legal standard, which would have the force and effect of law, and should have undergone the rulemaking procedures of 5 U.S.C. § 553(b).

121.    Statements of policy are *not* substantive, by definition, but are grouped with and treated as interpretive rules. *Azar v. Allina Health Servs.*, 587 U.S. 566, 573 (2019) (citing 5 U.S.C. § 553(b)(A)). Policy statements are exempt from the APA's requirements for the issuance of legislative rules, 5 U.S.C. § 553(b)(A), and do not have the force and effect of law, *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 103 (2015) (citing *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979) (citing ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 30 n.3 (1947))).

122.    A substantive standard creates duties, rights, and obligations. *Azar*, 139 S. Ct. at 1811 (citing Black's Law Dictionary 1281 (5th ed. 1979)). The State Department's rule to refuse to make a recommendation on a J-1 waiver application when a previous application was granted—counter to 22 C.F.R. § 41.63(b)(2)(ii)—affects an individual who is subject to the

35

foreign residence requirement and destroys their statutory right to request a waiver. From this, it follows that the public had a right to notice-and-comment before the State Department could adopt this rule.

123.    While agencies may use policy statements to bind some agency employees to the approach of the policy statement, policy statements may not bind agency employees in a manner that forecloses a fair opportunity for the public to argue for approaches different from those in the policy statement or seek modification of the policy statement. *See* Admin. Conf. of the U.S., Recommendation 92-2, *Agency Policy Statements*, 57 Fed. Reg. 30,103 (July 8, 1992); Office of Mgmt. & Budget, Exec. Office of the President, Final Bulletin for Agency Good Guidance Practices, 72 Fed. Reg. 3432, 3436 (Jan. 25, 2007) ("[A]gency employees should not depart from significant agency guidance documents without appropriate justification and supervisory concurrence."); *id.* at 3437 ("[W]hile a guidance document cannot legally bind, agencies can appropriately bind their employees to abide by agency policy as a matter of their supervisory powers over such employees without undertaking pre-adoption notice and comment rulemaking."); *id.* at 3440 (recommending agencies to maintain ways for the public to provide feedback on significant guidance documents).

124.    While the State Department can bind its employees to act according to its unwritten rule, under the principles above it cannot bind the public. However, the effect of the rule prevents applicants in similar circumstances to Plaintiffs from seeking a waiver of the foreign residence requirement and is therefore coercive to the extent that it has a binding legal effect. *See United States Telephone Ass'n v. F.C.C.*, 28 F.3d 1232, 1233-36 (D.C. Cir. 1994) (holding that federal agencies must follow the APA's notice and comment procedures before issuing any policy that is meant to bind). Applicants in similar circumstances to Plaintiffs have

36

no means to withdraw their previously approved waiver application in order to seek a separate waiver of the requirement.

125.   As a result of the State Department's rule, Plaintiffs have suffered and continue to suffer harm, including the denial of a lawful adjudication of their waiver application.

126.   Accordingly, the State Department's rule is without observance of procedure required by law and must be set aside. 5 U.S.C. § 706(2)(D).

## XIII.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for the following relief:

A.   A declaration that Defendant USCIS' denial of Plaintiff's Form I-612, Application for Waiver of the Foreign Residency Requirement, was arbitrary, capricious, an abuse of discretion, not in accordance with the law, and an unlawful subdelegation of statutory authority in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), (C)-(D);

B.   A declaration that Defendant USCIS' administrative demand that Plaintiffs "cancel" or "terminate" a contractually unutilized, previously finalized waiver approval is a legal impossibility, and that conditioning the merits adjudication of an exceptional hardship waiver on such cancellation is an abuse of discretion and contrary to law under 5 U.S.C. § 706(2)(A);

C.   A declaration that Defendant State Department's unwritten rule or practice of categorically refusing to review or permit the review of an open Form I-612, Application for Waiver of the Foreign Residency Requirement, due to a prior unutilized waiver approval is *ultra vires*, in excess of statutory jurisdiction, and

contrary to the explicit statutory requirements of 8 U.S.C. §§ 1182(e) and 1184(l) in violation of 5 U.S.C. § 706(2)(A), (C)-(D);

D.    A declaration that Defendant State Department's unwritten, blanket, restrictive rule operates as a binding substantive rule that is procedurally void for failure to comply with the mandatory public notice-and-comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553(b)-(c), in violation of 5 U.S.C. § 706(2)(D);

E.    An order to vacate and set aside Defendant USCIS' non-merits-based denial of Plaintiffs' Form I-612, Application for Waiver of the Foreign Residency Requirement;

F.    An injunction against Defendant State Department to cease applying or enforcing its unwritten, extra-regulatory rule to bar, stall, or otherwise interfere with the standard administrative processing and review of Plaintiffs' Form I-612, Application for Waiver of the Foreign Residency Requirement;

G.    A remand of this matter to Defendant USCIS with instructions to complete a full, substantive adjudication of Plaintiffs' Form I-612, Application for Waiver of the Foreign Residency Requirement, on the merits under the "exceptional hardship" standard of 8 U.S.C. § 1182(e) within thirty days of this Court's order, without requiring the "cancellation" or "termination" of Plaintiffs' prior unutilized waiver;

H.    An order to Defendant USCIS, upon a substantive finding of exceptional hardship, to immediately transmit its recommendation to the Defendant State Department's Waiver Review Division, and further order Defendant State Department to review the application and issue its recommendation in accordance

38

with standard statutory and regulatory channels, completely unhindered by the Plaintiffs' prior unutilized waiver;

I.     An award of reasonable attorney's fees and costs incurred in connection with this action pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412; and

J.     A grant of such other, further, or alternative relief as this Court deems just, equitable, and proper.

Dated:  July 6, 2026

*/s/ Brian C. Schmitt*
Brian C. Schmitt (Bar No. MD0023)
Hake & Schmitt
2 Locust Lane, Suite 203
Westminster, MD  21157
Phone: 410-635-3337
Fax: 410-635-3308
brian@jvisausa.com

ATTORNEY FOR PLAINTIFF