**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANGELICA PAOLA TRILLERAS GOMEZ, MD,<br>and<br>JONATHAN ALAN LIAO<br><br>*Plaintiffs*,<br><br>v.<br><br>MARKWAYNE MULLIN, *in his official capacity as Secretary of the U.S. Department of Homeland Security* et al.<br><br>*Defendants*. | No. 1:26-cv-02364-JMC |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii
INTRODUCTION .......... 1
LEGAL BACKGROUND .......... 1
A. Adjudication of J-Visa Waivers .......... 1
B. Regulation Ending Duration of Status .......... 2
FACTUAL BACKGROUND .......... 4
STANDARD OF REVIEW .......... 6
ARGUMENT .......... 7
A. Plaintiffs are likely to succeed on the merits of their claims. .......... 7
B. Plaintiffs will suffer irreparable harm if relief is not granted by September 15, 2026. .......... 7
C. The balance of equities and the public interest both favor the Plaintiffs. .......... 9
CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Cases**

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290 (D.C. Cir. 2006).......................... 8

*de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)............................................. 8

*Doe v. Bondi*, 785 F. Supp. 3d 1268 (N.D. Ga. 2025)........................................................... 8

*Guilford Coll. v. Wolf*, No. 1:18CV891, 2020 WL 586672 (M.D.N.C. Feb. 6, 2020) .................... 3

*Hinge v. Lyons*, No. CV 25-1097 (RBW), 2025 WL 1134966 (D.D.C. Apr. 15, 2025).................. 3

*Mashatti v. Lyons*, No. CV 25-1100 (RJL), 2025 WL 1744728 (D.D.C. Apr. 17, 2025)................ 8

*Nken v. Holder*, 556 U.S. 418 (2009)........................................................................ 6, 7, 9, 10

*Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4 (1942)............................................................... 6

*Sultan v. Trump*, No. 25-CV-1121, 2025 WL 1207071 (D.D.C. Apr. 24, 2025)............................ 8

*Winter v. NRDC, Inc.*, 555 U.S. 7 (2008)..................................................................... 6, 7, 8, 9, 10

*Wisc. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985) ............................................................... 8

**Statutes**

5 U.S.C. § 706........................................................................................................... 6, 7

5 U.S.C. §§ 553......................................................................................................... 6, 7

8 U.S.C. § 1182(a)(9)(B) ........................................................................................... 5, 8, 9

8 U.S.C. § 1182(e) ........................................................................................... 1, 2, 4, 5, 7, 10

8 U.S.C. § 1184(l)(2)–(3)................................................................................................. 2, 4

**Regulations**

22 C.F.R. § 41.63 ........................................................................................................... 1

8 C.F.R. § 103.2(b)(6)...................................................................................................... 2

8 C.F.R. § 212.7(c)...................................................................................................... 1, 2

Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media, 90 Fed. Reg. 42070 (Aug. 28, 2025) ........................................................ 3

Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media, 91 Fed. Reg. 44976 (July 17, 2026) .................................... 3, 4, 6, 8, 9, 10

**Other Authorities**

7 USCIS-PM B.3(E) ........................................................................................................ 5

U.S. Dep't of State, *Apply for a Waiver of the Exchange Visitor Two-Year-Home-Country Physical Presence Requirement*, TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/us-visas/study/exchange/waiver-of-the-exchange-visitor/how-to-apply-waiver.html (last visited Aug. 14, 2026).................................................. 2

USCIS, *Interoffice Memorandum: Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act* (May 6, 2009), https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF .. 3, 8

**INTRODUCTION**

Defendant U.S. Citizenship and Immigration Services ("USCIS") denied Plaintiff Dr. Angelica Paola Trilleras Gomez's ("Dr. Trilleras'") application for a waiver of the two-year foreign residence requirement particular to J-visa holders. Dr. Trilleras and her U.S. citizen spouse, Plaintiff Mr. Jonathan Liao (together, "Plaintiffs"), have challenged that denial on several grounds through litigation. Since they filed their complaint, the Department of Homeland Security ("DHS") has published a new regulation that will severely impact Dr. Trilleras' status as the litigation proceeds. Plaintiffs therefore seek a preliminary injunction to postpone the effective date of the new regulation as applied to Dr. Trilleras or to preserve her status under duration of status *pendente lite*.

**LEGAL BACKGROUND**

*A. Adjudication of J-Visa Waivers*

The legal background of J visas and the two-year foreign residence requirement is set forth fully in the Plaintiffs' First Amended Complaint on pages 14–22, ¶¶ 40–66. To summarize, the process of applying for a waiver of the two-year foreign residence requirement is a multi-step process that involves both USCIS and Defendant State Department ("DOS"). 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c); 22 C.F.R. § 41.63. For an exceptional hardship waiver, USCIS first must adjudicate whether fulfilling the two-year requirement would impose exceptional hardship on the applicant's qualifying relative. 8 C.F.R. § 212.7(c); 22 C.F.R. § 41.63(b). Then DOS's Waiver Review Division ("WRD") decides whether to provide a favorable recommendation for a waiver. 22 C.F.R. § 41.63(b)(2)(ii). Ultimately, USCIS makes the final determination about whether to grant a waiver. 8 U.S.C. § 1182(e); 8 C.F.R. § 212.7(c)(11).

There is no statute or regulation that states that a J-1 visa holder is barred from applying for one kind of a waiver if they have previously been granted a different type. On the contrary, the statute and regulation governing clinical waivers states that a physician who does not fulfill their clinical waiver service contract will again be subject to the two-year foreign residence requirement. 8 U.S.C. § 1184(l)(2)–(3); 8 C.F.R. § 212.7(c)(9)(iv). This indicates a reset to the original duty to fulfill the requirement or obtain a different waiver.

Additionally, there is no process for a J-1 visa holder to "cancel" a previous waiver recommendation application that has been granted by the WRD. 8 U.S.C. §§ 1182(e), 1184(l); 8 C.F.R. § 103.2(b)(6) (stating that an application for a benefit can be withdrawn "at any time until a decision is issued by USCIS"); U.S. Dep't of State, *Apply for a Waiver of the Exchange Visitor Two-Year-Home-Country Physical Presence Requirement*, TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/us-visas/study/exchange/waiver-of-the-exchange-visitor/how-to-apply-waiver.html (last visited Aug. 14, 2026) (emphasizing, in Step 7, "[a]fter the Waiver Review Division sends its recommendation to USCIS, you must contact USCIS for the status of your case as the Department of State no longer has jurisdiction").

Although USCIS and DOS both have a role to play in the waiver adjudication process, neither agency can abdicate its statutory duty to complete its portion of the process. 8 U.S.C. § 1182(e).

*B. Regulation Ending Duration of Status*

Along with several other visa classes, J visas are inherently tied to the specific program that exchange visitors participate in during their time in the U.S. 8 U.S.C. § 1182(e). To facilitate that participation and reduce administrative burden, the legacy INS instituted J visa admission under "duration of status" ("D/S") instead of setting a fixed ending date to the visa. Establishing

a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media, 90 Fed. Reg. 42070, 42071 (Aug. 28, 2025). This allowed J-visa noncitizens to be legally present in the U.S. through the end of their program. *Id*. It also affected how unlawful presence accrued after a J-1 exchange visitor finished her program. If a J-1 fell out of status, the J-1 did not begin to accrue unlawful presence until the day after receiving either a USCIS formal status violation determination or an order of exclusion, deportation, or removal from an immigration judge. *See Guilford Coll. v. Wolf*, No. 1:18CV891, 2020 WL 586672 (M.D.N.C. Feb. 6, 2020) (permanently vacating and enjoining a 2018 USCIS policy memorandum that attempted to trigger retroactive unlawful presence from the date of a status violation); *Hinge v. Lyons*, No. CV 25-1097 (RBW), 2025 WL 1134966, at *4 (D.D.C. Apr. 15, 2025) (noting the government's argument that an F-1 student's status was not revoked even though his SEVIS record had been terminated); Establishing a Fixed Time Period of Admission and an Extension of Stay Procedure for Nonimmigrant Academic Students, Exchange Visitors, and Representatives of Foreign Information Media, 91 Fed. Reg. 44976, 44984 (July 17, 2026) (citing USCIS, *Interoffice Memorandum: Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act* (May 6, 2009), https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF).

On July 17, 2026, the Department of Homeland Security ("DHS") published a final rule that will end D/S for J-visa noncitizens. Establishing a Fixed Time Period of Admission, 91 Fed. Reg. at 44976. After the final rule takes effect on September 15, 2026, all noncitizens admitted to the U.S. with a J visa will be admitted for a fixed duration of no more than four years. *Id.* at 45129. Those J-visa holders already in the U.S. who are maintaining status on that date will be

able to keep their D/S status until the end of their program or until four years after the rule takes effect. *Id.* at 45123.

Those J-visa holders already in the U.S. on September 15, 2026, who have not maintained status have no transitional protection, however. *Id.* at 45019. These noncitizens will start accruing unlawful presence on September 15, 2026, a major change from previous policy. *Id.* at 45099. This change has accelerated the urgency of Dr. Trilleras' waiver litigation.

## FACTUAL BACKGROUND

The full facts about Dr. Trilleras' case are set forth in the Plaintiffs' First Amended Complaint on pages 22–32, ¶¶ 67–101. Dr. Trilleras originally applied for and was granted a "clinical waiver" to the two-year foreign residence requirement, but after her marriage to Mr. Liao, a U.S. citizen, and under advice from previous counsel, she chose to pursue an exceptional hardship waiver instead. Plaintiffs' First Amended Complaint 22–24. When Dr. Trilleras made this decision, she communicated with the employer-sponsor of the clinical waiver to alert them that she no longer intended to use the waiver. *Id.* at 23. Dr. Trilleras believed in good faith that she had taken the steps necessary to terminate the use of the clinical waiver. *Id.* at 22–24. As explained above, however, there is no legal mechanism to cancel an approved waiver application.

By deciding not to fulfill her employment contract and change to H-1B status, Dr. Trilleras' clinical waiver became moot by operation of law. 8 U.S.C. § 1184(l)(3)(A). Dr. Trilleras became again subject to the two-year foreign residence requirement. *Id.* Once she was again subject to this requirement, the ability to file a waiver application of a different type was also available to her. 8 U.S.C. § 1182(e).

Based on the advice of previous counsel, Dr. Trilleras believed in good faith that filing the exceptional waiver hardship application would provide protected or tolled status while the

application was pending. *But see* 8 U.S.C. § 1182(e) (enumerating restrictions on nonimmigrant and immigrant status only without allowing that a pending application provides authorized stay); § 1182(a)(9)(B)(ii) (noting that the Attorney General may authorize a period of stay); 7 USCIS-PM B.3(E) (saying that a pending application does not automatically afford protection against removal for out-of-status applicants).

About sixteen months after filing her exceptional hardship waiver application, Dr. Trilleras received a Request for Evidence ("RFE") which included a directive to either terminate her clinical waiver application or withdraw her pending hardship application, because "the Department of State will not review an open I-612 application if you have an approved State application." Plaintiffs' First Amended Complaint 26. Dr. Trilleras, through previous counsel, timely responded to the RFE with the requested evidence and a statement that she wished to cancel the clinical waiver and proceed with the hardship waiver. *Id.* at 28–29. Her responses included a signed declaration that requested USCIS to process the cancellation, since there is no other formal procedure to do so and USCIS gave no directions about how to do so. *Id.* at 29.

On March 26, 2026, USCIS issued a decision to deny the hardship waiver application on the basis that Dr. Trilleras had not cancelled her clinical waiver. *Id.* at 30. This decision relies on both a legal inaccuracy, that J-visa holders who have received a previous waiver are able to cancel the granted waiver, and apparent reliance on an unpublished, unpromulgated, DOS rule that J-visa holders are only eligible to apply for one waiver. *Id.* at 27–28; 31.

USCIS' denial of Dr. Trilleras' waiver application on the grounds that DOS has an unpromulgated 'one waiver per customer' rule abdicates USCIS' statutory duty to adjudicate Dr. Trilleras' application on the merits of her exceptional hardship case. 8 U.S.C. § 1182(e). If such a rule exists, it is arbitrary and capricious 'secret law' that is in excess of DOS's statutory right. 5

U.S.C. § 706(2)(A), (C). It also does not comply with the notice-and-comment procedure that the Administrative Procedure Act (APA) requires. 5 U.S.C. §§ 553, 706(1)(D).

In the process of challenging the agencies' actions, Dr. Trilleras, through current counsel, submitted FOIA requests to both USCIS and DOS. Plaintiffs' First Amended Complaint 31. These requests sought access to records that explain USCIS' basis for its reliance on the DOS 'one waiver per customer' rule and the legal process for cancelling a previously granted waiver. *Id.* at 31–32. Dr. Trilleras requested expedited processing of the FOIA request due to the urgent need for the information to advance her case. *Id.* at 32.

Both agencies submitted boilerplate FOIA responses that invoked "unusual circumstances" to extend their response time. *Id.* Both agencies completely ignored the request for expedited processing and communicated neither a grant nor a denial of expedited processing within 10 days, which passed on July 19, 2026. *Id.*

DHS published its final rule ending D/S in the Federal Register on July 17, 2026, adding an additional layer of urgency to Dr. Trilleras' pursuit of relief. Establishing a Fixed Time Period of Admission, 91 Fed. Reg. 44976 (July 17, 2026).

**STANDARD OF REVIEW**

A preliminary injunction is considered an extraordinary remedy. *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Yet it is "part of [the Court's] traditional equipment" to allow for the Court to grant meaningful relief despite the time burden litigation requires. *Nken v. Holder*, 556 U.S. 418, 421 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10 (1942)). When seeking a preliminary injunction, a plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555

U.S. at 20. The first two factors (likelihood of success on the merits and irreparable harm) are generally considered the most important. *Nken*, 556 U.S. at 434. When the opposing party is the government, the third and fourth factors (balance of equities and public interest) merge. *Id.* at 435. In this case, each factor weighs in favor of granting the preliminary injunction.

## ARGUMENT

### *A. Plaintiffs are likely to succeed on the merits of their claims.*

To demonstrate likelihood of success on the merits, a Plaintiff must show more than "possibility" of success. *Nken*, 556 U.S. at 434. Here, Defendant USCIS' refusal to adjudicate Dr. Trilleras' exceptional hardship waiver is based not on statutory, or even regulatory, guidance, but on USCIS' misunderstanding regarding waiver termination and on an unpromulgated DOS policy. Plaintiffs' First Amended Complaint 30. USCIS asserted in its Request for Evidence that Dr. Trilleras could terminate her clinical waiver. *Id.* at 26–27. Because there is no legal mechanism for Dr. Trilleras to terminate the waiver once it was granted, USCIS misstated the law. Additionally, USCIS' reliance on an unpromulgated 'secret law' policy under which DOS will only grant one waiver per J-visa holder is an unlawful subdelegation of USCIS' statutory duties within the J-visa waiver framework. 8 U.S.C. § 1182(e). Furthermore, if DOS is truly enforcing a policy that did not undergo notice-and-comment, then DOS is acting ultra vires and in excess of statutory authority under the APA. 5 U.S.C. §§ 553, 706(2)(C)–(D). Under such clear agency violations of statute, Plaintiffs are likely to succeed on the merits of their APA claims.

### *B. Plaintiffs will suffer irreparable harm if relief is not granted by September 15, 2026.*

A plaintiff must also show that irreparable harm is likely, not just possible, to obtain a preliminary injunction. *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). The D.C. Circuit has held

that the injury "must be both certain and great; it must be actual and not theoretical." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)). Harm is not irreparable if it can be remedied adequately through monetary damages. *Doe v. Bondi*, 785 F. Supp. 3d 1268, 1284 (N.D. Ga. 2025).

This court and others have found that the accrual of unlawful presence is a form of irreparable harm. *Mashatti v. Lyons*, No. CV 25-1100 (RJL), 2025 WL 1744728, at *2 (D.D.C. Apr. 17, 2025); *Sultan v. Trump*, No. 25-CV-1121, 2025 WL 1207071, at *4 (D.D.C. Apr. 24, 2025); *de Jesus Ortega Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012); *Doe v. Bondi*, 785 F. Supp. 3d at 1286. Unlawful presence accrual of more than 180 days leads to multi-year bars to reentry, but any unlawful presence accrual places a noncitizen at immediate risk of detention and deportation. 8 U.S.C. § 1182(a)(9)(B)(i)(I); *Sultan*, 2025 WL 1207071 at *4.

As a J-visa physician, Dr. Trilleras has been in the U.S. under D/S. Although she stayed past the end of her program, she did so under a good-faith belief that applying for the hardship waiver would toll her status. Plaintiffs' First Amended Complaint 24. Dr. Trilleras has not thus far been accruing unlawful presence due to the longstanding USCIS policy regarding unlawful presence and duration of status. USCIS, *Interoffice Memorandum: Consolidation of Guidance Concerning Unlawful Presence for Purposes of Sections 212(a)(9)(B)(i) and 212(a)(9)(C)(i)(I) of the Act 25* (May 6, 2009), https://www.uscis.gov/sites/default/files/document/memos/revision_redesign_AFM.PDF. This will change on September 15, 2026. Establishing a Fixed Time Period of Admission, 91 Fed. Reg. 44976, 44976 (July 17, 2026). If Dr. Trilleras does not receive relief for her status by that date, she will begin to accrue unlawful presence. *Id.* Harm to Dr. Trilleras through the accrual of unlawful presence is therefore certain without relief. Given the pace of

litigation, Dr. Trilleras could easily accrue the 180 days of unlawful presence that may trigger a three-year reentry bar should she leave the U.S. for any reason. 8 U.S.C. § 1182(a)(9)(B)(i)(I).

Dr. Trilleras will incur other harm if she does not receive a stay on the new regulation's application. The hardship factors demonstrated in her application will affect Mr. Liao, her U.S. citizen spouse, just as greatly should Dr. Trilleras need to leave to avoid unlawful presence or should the entire family move abroad for this reason. *See* Plaintiffs' First Amended Complaint 25. Additionally, Plaintiffs welcomed their first child in June, so there is now an additional U.S. citizen whose rights and needs are affected. *Id.* at 31.

The impending September 15 change in immigration policy will result in the immediate accrual of unlawful presence, harming Dr. Trilleras in a way that monetary damages cannot remedy. Dr. Trilleras and her family will therefore suffer irreparable harm if the court does not grant a preliminary injunction.

*C. The balance of equities and the public interest both favor the Plaintiffs.*

When a Plaintiff requests a preliminary injunction against the government, courts consider the balance of equities and public interest factors together. *Nken v. Holder*, 556 U.S. 418, 435 (2009). For the balance of equities, courts weigh the burden that the injunction places on or removes from each party. In *Winter v. NRDC*, for example, the U.S. Supreme Court held that an injunction requiring submarines to shut down their sonar whenever a marine mammal was detected within 2,200 yards of the vessel overly burdened the Navy. *Winter v. NRDC, Inc.*, 555 U.S. 7, 27–28 (2008) . The large shutdown zone prevented the Navy from carrying out necessary training objectives for national security, which impacted both the balance of equities and the public interest. *Id.* at 26. While the Court recognized the potential burden on the

environment by overturning the injunction, it found that the Navy established a greater burden and so removed the injunction. *Id.* at 33.

Here, the Plaintiffs face the greater burden. DHS, of which USCIS is a component, has changed agency regulations to require greater oversight of J-visa noncitizens. Establishing a Fixed Time Period of Admission, 91 Fed. Reg. 44976, 44976. Dr. Trilleras has already provided the information needed by USCIS to monitor her case, by filing the hardship waiver application and through this litigation. Rather than asking USCIS to make a massive change in its practice, like the *Winter* plaintiffs sought, Dr. Trilleras simply requests that the Court pause her accrual of unlawful presence under the new regulation *pendente lite*. Since Dr. Trilleras' burden of a choice between a disruptive international move or accruing unlawful presence that could prejudice her long-term outcomes is great, the balance of equities clearly favors the Plaintiffs.

Since the balance of equities favors the Plaintiffs, the public policy factor should also tip in their direction. Moreover, Defendants and the public have a joint public policy interest in ensuring that U.S. agencies follow their statutory duties. U.S. immigration law, including the J visa program, recognizes a public policy interest in keeping families together. *See, e.g.* 8 U.S.C. § 1182(e) (allowing dependent family members to accompany J-1 visa holders and providing the exceptional hardship waiver basis). And the courts have a public policy interest in maintaining their ability to grant meaningful relief through the litigation process. *Nken v. Holder*, 556 U.S. 418, 421 (2009). Granting a stay of Dr. Trilleras' unlawful presence accrual to maintain the status quo during litigation would uphold all these public policy objectives.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter a preliminary injunction staying the application of DHS' new final rule and Dr. Trilleras' accrual of unlawful presence *pendente lite*.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Brian C. Schmitt*
Brian C. Schmitt (Bar No. MD0023)
Hake & Schmitt
2 Locust Lane, Suite 203
Westminster, MD 21157
Phone: 410-635-3337
Fax: 410-635-3308
brian@jvisausa.com

ATTORNEY FOR PLAINTIFFS